Whenever you're ready, Counsel. Good morning, and may it please the Court. Omar Jafri from Pomerance for Plaintiff Mark Habelt. Your Honors, I would like to reserve three minutes for rebuttal. There were three principal errors made in the lower court. First, the application of Epstein v. Washington to this case cannot be reconciled with the statutory text of the Securities Exchange Act. Mr. Jafri, may I ask you a predicate question? Your client is Mr. Habelt, right? Yes, Your Honor. He's seeking his own individual claim for securities violations? His own individual claim, as well as the claims of the purported class. All right. He filed a complaint in which he so stated, correct? Yes, Your Honor. His claim and the class claims? Yes, Your Honor. That's correct. Subsequently, there was an amended complaint and a second amended complaint filed by, I think it was, what is the PRMS, the Mississippi outfit? The Public Retirement System of Mississippi. In that second amended complaint, the name of your client does not appear. It does not. No claim is stated in that complaint for your client, correct? Your Honor, that complaint was, his name is not present. Right. So no claim by Habelt is stated in the second amended complaint. As an individual, no, there isn't. Or as a member of the class, because he was being represented by the Mississippi outfit. Well, the Mississippi Retirement System brought a purported class action. And they were named as the lead plaintiff and they were in charge of that litigation. Yes, Your Honor. What gives you standing here? So all I can see is the caption of the complaint, the operative complaint. I don't see that you have any standing here. Your Honor, so I would argue what we initially argued in the brief, which is that Mr. Habelt is a party, according to the Supreme Court. But he's not a party. Our law is that the amended complaint supersedes the original, the latter being treated thereafter as non-existent. That's Ramirez versus the city of San Bernardino. So therefore, there is no claim extant after the filing of the second amended complaint by Mr. Habelt in this case. Your Honor, I think that what makes this unique and different is that. Could you answer my question? What is the basis of Mr. Habelt's claim stated in the second amended complaint from which you have purportedly sought an appeal? Your Honor, he was a member of the class itself and he filed the initial complaint as a class action. And you would agree that the initial complaint is non-existent after the filing of the second amended complaint, would you not? With respect to the allegations, yes. So there are no allegations that Mr. Habelt was hurt in the second amended complaint? Your Honor, I think the fact that he filed an initial complaint and he intended to bring a class action. Why didn't he file a motion to intervene to state his own individual claim at the time that the Mississippi action was filed, the complaint was filed? So, Your Honor, once the dismissal occurred, the plea plaintiff stepped aside. There was no one else to represent the interests of the class. Or before that, when the Mississippi plaintiff was designated the lead plaintiff, right? Yes, Your Honor. In a complaint which did not mention Habelt's individual claim or his attempt to claim a class action status, why didn't Habelt intervene to say I want to make my own claim? Your Honor, before the dismissal, there was no need for him to intervene because the retirement system was representing him. Counsel, aren't you also arguing that the complaint describes the harm suffered by every putative class member and Mr. Habelt is a putative class member and thus he is described in the allegations alleging harm to all putative class members? Absolutely, Your Honor. That is completely correct. And that is, I think, one of the bases for why he can appeal. And just, Your Honor, even But you would agree with me that Mr. Habelt has no standing in the class action filed under the second amendment complaint once the lead plaintiff has been designated by the district court a decision from which there is no appeal? Your Honor, respectfully, I would not agree. And the reason why is because the fact that he was no longer involved to control the litigation in the lower court didn't wipe out his appearance in the case. He was being represented by the Mississippi lead plaintiff. Yes. According, that decision that he should be represented as a member of the class by the Mississippi plaintiff, lead plaintiff, was not appealed. By Mr. Habelt, it was not. By the retirement system, it was not. I don't I don't see that you have any standing. But anyway, you can see with your with your argument. Your Honor, I think with just one point that I would want to address is that even if the court were to conclude that Mr. Habelt is not a party to the litigation, I think there are good grounds to apply the exceptions that the court has enunciated in SEC versus Wenke. So Mr. Habelt, Your Honor, I would submit would be able to intervene as of right, just as the plaintiff would be in Wenke. The only thing is that he did not. And the reason why he did not is because he already had a reason to believe that he was a party to the case since he brought the lawsuit. And in Wenke, Your Honor, the court had said that even if there was some confusion about whether this person should have intervened, given the equities here, we are going to give the benefit of the doubt to the abettor. Could I have the name of that case that you are citing? Your Honor, it is SEC versus Wenke, W-E-N-K-E. We cited it in both the opposition to the motion to dismiss for lack of jurisdiction, which was denied, as well as the reply brief. The citation to that case is 783 F.2D 829. In that case, just as Mr. Habelt suffered a financial loss in his shares, the plaintiff had also suffered financial harm to those shares. The plaintiff had simply appeared and objected in the lower court, and that was deemed sufficient participation in the lower court. Here, Mr. Habelt did far more than that. He just didn't file an initial complaint. This was a complaint filed pursuant to the Private Securities Litigation Reform Act. The whole purpose of that statute was to prevent ill-researched, hurried complaints. So there was already enough investigation done before the complaint was filed. He provided notice to all class members. He was present. He never withdrew his appearance. And all he did when the retirement system stepped aside, once the complaint was dismissed with prejudice, is protect the interests of those absent members. And, Your Honor, another case which I would point you to is the circuit's decision in Powers v. Eichen, where, again, there was a non-party, to the extent, Your Honor, believes that Mr. Habelt did not have standing. And the reasoning employed there was that the plaintiff had stepped up to protect the interests of the class members, that a reversal would benefit everyone, and that it made no sense at that point to require that plaintiff to intervene, given that it would just result in an inefficient result, which would also be inequitable to everybody else. And here, I would also say that the inequity just doesn't run against Mr. Habelt. It may mean that no other individual may be able to file another class action in this case. Your Honor, I would want to move on. If it's OK with the court, I would like to move on to the merits. With respect to Epstein, it was a sweeping application of that precedent. It is inconsistent with the Securities and Exchange Act, which basically doesn't allow a defendant to omit any material fact that would render a statement misleading. It is also not consistent with numerous precedents of this court, including in arena pharmaceuticals, in orexigen therapeutics, and in ethosogenetics, all of which involved uncertain, unpredictable, and unknowable regulatory proceedings. Yet the defendants there had made misleading statements about the information that they submitted to the regulator, just like the defendants did here. They had made misrepresentations about their communications with the regulator and the feedback that they received here. And the court said that they couldn't do that. And it was actionable, even though there was no way for the defendants to know ultimately how the regulator would decide the issue. In fact, in arena pharmaceuticals, once the case reached this court, the drug was ultimately approved. And here, in my view, their strongest argument against making these misleading statements is, well, we got an upward adjustment to the rates, which showed that there was unpredictability. And therefore, whatever we said before doesn't matter, even if it was false. The second point, Your Honor, is the application of the safe harbor to this case is not consistent with quality systems where this circuit held that a defendant cannot combine present or current misrepresentations of fact with forward-looking statements about projected revenues and invoke the safe harbor to escape liability for securities fraud. Recently, in Forescout Technologies, the fact pattern was the same. They made those misrepresentations to support future guidance. And the court found that those misrepresentations were actionable. Here, to quickly go through some of the misrepresentations, Mr. King said that they provided everything, including 500,000 invoices. This is misrepresentation to? Misrepresentations to investors in Congress. I'm sorry, number two in your. Yes, Your Honor. That's correct. Number one and number two, where he made categorical misstatements and said that he that they provided 500,000 invoices. And then he went on before the final rule and he claimed that CMS had everything they can get from us. Once the CMS rejected national pricing, he tried to downplay that negative impact. And he made a specific misrepresentation and said that they couldn't provide invoices for the cost components. Mr. Coyle again made that misrepresentation later. That representation was false because the confidential witness in this case who directly reported to the defendants stated that they knew all along what the cost of each component was. But part of your argument on this misrepresentation, I think it's second amendment complaint. Paragraph 150 is and they have everything they can get from us is a statement of fact that you allege is just simply an untrue statement of fact. Yes, Your Honor. It is correct. Not only because they didn't provide the invoices, but because Dr. Quinn told them before the misleading statements were made that you are going to run into problems with CMS if you don't break down these costs. He also told them one very specific fact that was ignored in the lower court, which was that Novita's rates were inflated. Your Honor, if there aren't any more questions, I would like to reserve the balance of my time. All right. Thank you. May it please the court. I'm Ignacio Salceda on behalf of defendants appellees. I'd like to begin with a standing question and then spend a couple of minutes on the failure of the second amended complaint filed by the Mississippi Fund to state a claim. But I want to go to the first point, which Judge Bea, you raised right away, which is Mr. Habel does not have standing to maintain this appeal. Mr. Habel filed the initial complaint. And then did nothing else. It's just like the Volkoff case decided by this court three years ago. Mr. Habel did not move for appointment of lead plaintiff. The Mississippi Fund did and two other individuals did pursuant to the Security Sedigation Reform Act. Judge Chen appointed the Mississippi Fund, which had the largest alleged loss. The other two movements had lower losses. Mr. Habel didn't even move. Well, I mean, wasn't wasn't Mr. Habel's interest just minuscule compared to the compared to the lead plaintiffs? Well, correct, Your Honor, in the sense that Mr. Habel alleged that he had bought 20 shares, you know, investment of under $5,000. And so that that's enough for standing, though, right? I understand your argument vis-a-vis the appeal, but but 20 shares or 20,000 shares, it's enough, right? Well, no, Your Honor, I was answering the question as to he had a minuscule amount that matters intensely for purposes of the Securities Litigation Reform Act, where Congress wanted to have the movement with the largest financial interest in the litigation to be appointed the lead plaintiff out of concern that otherwise you have lawyer driven cases with plaintiffs who have not no real financial interest. And here there were three movements, all of which had much more than 20,000 20 shares. And the Mississippi Fund, which I think alleged losses of about one point eight million dollars. They were selected as the lead plaintiff pursuant to the congressionally mandated analysis. So that's why I guess the import of my question is, would there have been any point to him trying to be appointed lead plaintiff given his minuscule? Well, we don't know. I mean, but he didn't. And the fact is, he didn't. And Congress wants to have the court pick as the person or entity that controls the litigation, to use the Eighth Circuit's phrase in Bank of America, the movement with the largest financial interest. He didn't bother. He wasn't selected, but it's not just that, Your Honor.  As Judge Baya noted, he didn't move to intervene. He didn't move to ask to be part of the complaints filed by Mississippi. Mississippi filed the first amended complaint and then filed a second amended complaint, which was litigated before Judge Chen dismissed. And then didn't Mississippi keep the caption, which described as Mr. Hay built as individual and class of representative? It not as a class representative, just as an individual. And as this court has held repeatedly, the fact that the caption has a name is not dispositive. But it's not irrelevant. What? It's not irrelevant. It can be irrelevant, Your Honor. What matters is that the contents of the complaint and this court has said that and other circuits have as well, that you look at the body of the complaint. And as Judge Baya noted, the body of the complaint does not mention Mr. Havel. It does not mention when he bought the stock, doesn't mention if he sold the stock, doesn't mention how many shares, doesn't mention anything. He is absent. He was also absent from the briefing of the motion to dismiss. He wasn't present in the motion to dismiss hearing. And so he doesn't have standing. And the fact is that as this court held in Volkoff, when a initial plaintiff is no longer a participant in the case in Volkoff's phrase, his his participation ceased upon. Could you give me the case name again? Yes. The case is Volkoff, Your Honor. We cited a spelling for me. Would you mind? Yes, Your Honor. Let me give you the exact spelling. It's United States Xrel Volkoff. Volkoff? Yes. How do you spell that? V-O-L-K-H-O-F-F. Versus Janssen. 9-4-5-F-3-12-37. It's a 2020 decision from this court and it's cited in our our brief. And this court held that at that point, when Volkoff was no longer was not a participant in the case, his participation in the case ended and he could not appeal. And when he appealed, this court found that it did not have appellate jurisdiction and dismissed. There's also the question. But in Volkoff, I thought that the situation was that the petitioner there essentially chose not to participate. Sort of made clear that they were no longer interested in this suit. Is that the case with Mr. Hebel here? Well, presumably so, because he didn't move for lead plaintiff. He didn't seek to intervene. He didn't file any complaint for the complaints. He didn't participate in the motion to dismiss briefing. He didn't participate in the motion to dismiss hearing. So, yes, he seems to have made a choice not to participate. The fact that he may be a member of a class is not sufficient to grant standing to appeal, nor is it sufficient for Article three standing because the class here was not certified. So he is not a party because it is. He is a member of an uncertified class. And we cited the Supreme Court's decision in Smith versus Bayer where the court said that it's surely in error to claim that a member of an uncertified class is a party. So the fact that he is a member of the class is there wasn't a class yet. Would Mr. Hebel be bound by any judgment in this case? He is not a party to the judgment. Be no risk to the effect as to him. Well, that but also there's no Article three standing, because as the Supreme Court held in the Argus leader case, the Article three standing has to run from the judgment. And there wasn't a judgment, just like other class members, other than Mississippi. Mississippi litigated lost there. They would have a problem, but they would have Article three standing to maintain an appeal. But they chose not to appeal. We can speculate as to why they chose not to appeal. But the reality is that as a result, absent class members don't have standing to appeal under the Smith case. And there's an Article three standing issue as well, as we talked about in our papers and as we just discussed. But just to be clear, then, Mr. Hebel, can he's free to bring his own suit again against the defense? I can't stop him from filing a complaint. They're concerned about statute of limitations. I haven't seen a complaint that I would move to. We're putting that aside. But putting that aside, he was not a party to the judgment and therefore he can't appeal. What would happen if he were to file a complaint tomorrow? I can't speculate. I think he may have some issues and but just on the merits of nothing else. But not as a not as a matter of estoppel or res judicata. But because he is not a party to the judgment that was entered below. Correct, Your Honor. If I'm happy to answer any more questions on standing, but if I may turn to the because I think it is a threshold issue, it's governed under Volkov and it's dispositive. But let me turn briefly to the question of the merits. And here there are three separate grounds for affirming, two of which which were addressed by Judge Chen, which one of them he chose not to address because he didn't need to. This case is governed by the Securities Litigation Reform Act. It established heightened pleading standards for falsity and heightened pleading standard for alleging fraudulence. He entered in order to allege fraudulence. The allegations have to raise a strong inference of Center. It's not just enough that it might be, you know, a reasonable inference. Has to be strong, has to be coach. There's also the question of loss causation, which I'm happy to get into. Judge Chen didn't need to reach that because he granted the motion to dismiss on both on failure to allege actionable statement and on Center. But here I think that and we talk about it in our papers. There's a loss causation problem the plaintiffs have. But let me go back to the actionable statement and the fact that the second amended complaint filed by Mississippi does not satisfy the Reform Act. And there Judge Chen looked at it in two different ways. Mr. Jaffrey talked about the Epstein case and I'm happy to talk about the Epstein case. But I want to begin with the fact that most of the statements challenged here are forward looking statements governed by the Securities Litigation Reform Act. Let me push back a little on that. So if I refer to misrepresentation numbers in the plaintiff's chart, does that work for you? Yes. And also we submitted a response chart. Yeah. It's SCR 37. So let me start with misrepresentation two. All right. Why isn't, and they have everything they can get from us, simply a factual statement that if untrue as a fact would be actionable and is not some forward looking prediction. They allege that iRhythm actually had the standard cost data used by CMS and that this is a false statement and they have everything they can get from us. So what's wrong with that argument? So first of all, if you look at our chart, which is SCR 37, we note the various sections of our briefing below. By the way, Judge Shen requires these charts. It's pretty common in this district that we litigate by chart to some extent. We did not claim that statement two was governed by the safe harbor, but it is non-actionable and a non-actionable opinion statement. But let me get to the point about how is what I read a statement of opinion? Okay. First of all, because it's a statement of opinion as to. It says they have everything they can get from us. Well, because this is based on a misinterpretation and a misreading, I think purposeful, of what iRhythm does. iRhythm doesn't sell a patch. You can't go to the drugstore and get an iRhythm patch. It sells a ZEO service, part of which is this patch that the patient puts on his or her chest to measure electrocardiogram, cardiac activity, right? But it's not just the patch. The company provides a service. The patient is the cardiologist or the physician prescribes the patch, the patch is put on, but then the patient sends the patch back to iRhythm where that data is downloaded, analyzed through various algorithms, analyzed by a technician who looks at the data, and then provides a report to the patient's physician. So it's not just what's the cost of your patch. That's not what we are offering. And so this 500,000 invoices, and you can see is a reference to the fact that the company has provided this service hundreds of thousands of times. But this notion of cost, it is incorrect to view what iRhythm does as it's just a piece of adhesive tape and some wiring in it. It does much more than that. The value of this is the analysis, obviously getting the data, analyzing the data, providing the data to the physician. So that is why this traditional cost notion about a patch is incorrect. And remember, this is part of an evolution in the way CMS has looked at this technology. For years, the company was under this Category 3 code for emerging technologies, new technologies. And under that, it was reimbursed $311 to $316, a price set by Novitas. And that's in the complaint, and I can give you the citation if you'd like. But that's specifically in the complaint that Novitas had set the prior $311 to $316 price. And you can see that at paragraph 57, it's ER726. And so then the American Medical Association said, this is no longer just an emerging technology. This is, it's great technology, but it's the standard of care. And as a result, it should get a Category 1 code. And the AMA's committee. But counsel, the allegation is that your client knew that this was the standard type of data used by CMS, that it deliberately withheld it knowing that it would result in an unfavorable result and that Mr. King knew this when he stated they had everything they can get from us. So you might, you might be able to convince a trier of fact that he wasn't lying or it wasn't a false statement, but I don't understand, even from your argument, why it's not a statement of fact that the plaintiff's allege is simply a lie. It is a statement, but it is also in context. And it's an opinion as to what they need. Well, it says everything they can get from us. About our service. The, what we're selling is not a piece of sticky tape and some wiring. We're selling a service. And that is what, and if you look at the context of his statements, and in the one minute I have left, I think context is vitally important.  And if you consider Epstein and the subsequent developments in the law, it's important to look at context. Epstein is about context. The uncertainty of a regulatory proceeding. A regulatory proceeding in this instance. So, counsel, moving to another statement. Yes, of course, Ron. So for misrepresentation 13, CEO Coyle's statement, obviously, as I mentioned, they, meaning Novotaz, who you just referred to, haven't spoken to us about how pricing was being established. Plaintiffs have alleged that that is simply a false statement of fact. What's wrong with that allegation? The allegation is placed, and I'm running out of time, but I want to answer your question, Your Honor. The allegation is based on a supposed conversation, or a supposed comment that Dr. Blaschczyk. Dr. Blaschczyk, or Blaschczyk, sorry if I'm mispronouncing it. I had to check it, too. If you, you can find a YouTube video where he is asked the question, is that how to pronounce it? And he says, yes, and that is how, Your Honor is right, that's how he pronounces it. And Dr. Blaschczyk allegedly said not how they set the price, but that they're not, they're unwilling to consider a change unless other MACs may be willing to consider the price. That's a different issue. How do they set this price of $65, whereas beforehand, Novotaz itself had done $311. The AMA has suggested over $400. CMS in its proposed ruling had set an increase of well over $350, and then they come out with this number that was such a shock in the industry that people in the industry thought it was a mistake. Like, is this real? There's no allegation whatsoever. Not only that the company had foreknowledge that Novotaz was going to come out with such a shocking low number, but that they explained how they got the number. Dr. Blaschczyk's comment is not, taking it at face value, and I can explain how that's, maybe you shouldn't, but let's take that at face value. It doesn't say how they got the price. It only says. But it does say that they hadn't talked to Novotaz. That's a falsifiable statement of fact. You forgot the rest of the quote, Your Honor. It's not that we haven't talked about Novotaz. On the contrary, they said repeatedly, we have engaged with them, and we have engaged with it. He's asking, and Judge Bennett was asking specifically about how the price, how they arrived at the price, but absolutely the company was engaged with Novotaz. And if you look, it repeatedly said during the period after the shocking news in January that they were engaging with Novotaz, they were engaging with CMS, they were engaging with other MACs, but there is no allegation in the complaint that Novotaz told them how they calculated this price. And by the way, in April. In other words, would you claim that this statement is true? What? That I, that. That Novotaz haven't spoken to us about how pricing was being established. Yes, because, well, there's certainly no allegation in the complaint that they set, that they explained how they arrived at the price. And by the way, in April, Novotaz itself increased it to $115. So more than a 50% increase in just three months. So, counsel, I've taken you a lot over your time, but if you want to take a minute or so with any final points. Yes. Let me talk about Epstein, because it's a very interesting decision by this court over 20 years ago. Subsequent developments show that Epstein, the reasonableness, not only the reasonableness, but the insight of Epstein, in two different ways. One is Epstein talks about forward-looking statements in the context of a regulatory proceeding. And then, of course, Congress adopted the Securities Litigation Reform Act, which has the forward-looking statement, which has a safe harbor. In addition, I'd urge the court to consider, in context, these statements that we were talking about, an opinion statement or a factual statement in context. And context is very important, as Judge Kagan's decision and the Omnicare securities decision, adopted for 10B purposes by this court in aligned technology, said context matters. And in this context, what you have is a regulatory proceeding, which is a black box. And, as the court noted in Omnicare, a key part of context is industry practice and what is happening in the industry. And you need to have that context, both in terms of the product and service, not just a single patch that iRhythm is selling, but also the context in which this happened, both pricing before and to this day, has kept increasing. So this notion that the Novotaz decision issued in January was the end-all and be-all is obviously incorrect. Thank you, Your Honors. Thank you, Counsel. We'll give you four minutes for your rebuttal. Thank you, Your Honor. With respect to the merits, Mr. Salcedo talked at length about the difference between the patch and the rest of the components of the service. No one has said here that there is a difference between the patch and the other components, which is, for instance, the fact that they send this data to the cardiac technician who does an analysis and things of that nature. The fact of the matter is that CMS repeatedly said that it did not have an invoice to show what the price was for the services. The services are inclusive of the patch. There is a confidential witness who directly reported to Mr. Salcedo's clients who has said they knew what the cost of each component was. The briefs that the defendants filed in this court admit that they knew the cost of each component. So when you take those admissions and the confidential witnesses' testimony, and then you consider the statements that both CEOs made, which is that precise inputs for these categories do not exist, and that CMS has a rather rigid framework that requires precise inputs that we cannot provide. Both CEOs made these statements, and that's simply not consistent. And it's also disingenuous in light of the fact that the Mueller report examined an invoice from a direct competitor, Biotelemetry, and they had one. Ultimately, CMS received 21 invoices from their competitors. Yet remarkably, they still insist that they couldn't break down the cost. So, Your Honor, this is just simply, it's simply not correct to split hairs in the fashion that the defendants are doing so now, because they were never honest about what it is that they provided to the CMS. And in terms of the withheld information, there's no reason to believe that they couldn't provide a breakdown of the cost when everyone else was able to do so, and they have admitted that they knew what the cost of the component was. To go back to your question, Justice Bennett, there are multiple current misrepresentations of fact. The defendants are trying to create a new safe harbor, which is, well, if you look at the overall context, and there's this amorphous sense in which they say, well, it's a regulatory proceeding, and some of the questions here refer to what would happen in the future, but this is completely inconsistent with what the court has held time and time again, which is that you cannot combine current misrepresentations of fact with forward-looking statements and escape liability for the current misrepresentations. In quality systems, the court quoted from Stone and Webster, which was a First Circuit case, and there the First Circuit had said that if you have this combination of these two statements, we will only apply the safe harbor to the forward-looking aspects. That was not done in the lower court, and it was erroneous and inconsistent with what the court has said time and time again. Finally, Your Honor, on the issue of standing, Judge Thomas, you had brought up the fact that he only bought 20 shares. That's correct, but he still suffered a harm, and under the statute, there are three presumptions. If you file a complaint, you're an adequate representative. If you move for lead, you're an adequate representative. Or if you have the largest financial loss, you're an adequate representative. As a practical matter in our practice, usually the person or the entity that's appointed is the one with the largest loss, and that was our client, the public retirement system of Mississippi when we litigated the court. That client has stepped aside. The only other person who is there to protect absent members is Mr. Haybelt, who is a presumptive adequate representative under the language of the statute. And finally, Your Honor, one very important point that I must make is that when it comes to the standing issue in Arbaugh, the Supreme Court said that if the statute does not speak in jurisdictional terms, the court should not impose jurisdictional requirements. Nothing in the Private Securities Litigation Reform Act says anything about who can appeal, and nothing in that statute says whether there is any jurisdiction or not depending on who files the appeal. All right. Thank you, Counsel. Thank you, Your Honor. All right. We thank counsel for their argument. The case just argued will be submitted.
judges: BEA, BENNETT, THOMAS